UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISRAEL IBARRA PEREZ (A-No. 249-111-395),<br>Petitioner,<br>v.<br>ANDREWS, et al.,<br>Respondents. | Case No. 1:26-cv-07962-JLT-HBK<br><br>ORDER GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS; DENYING THE MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT; DENYING THE MOTION TO APPOINT COUNSEL AS MOOT; AND ORDERING PETITIONER'S IMMEDIATE RELEASE<br><br>(Docs. 1, 3, 4) |

## I. INTRODUCTION

Before the Court is Israel Ibarra Perez's request for a temporary restraining order (Doc. 4), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 1.) The government filed a response to the TRO and the underlying petition, asserting that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) as an "applicant for admission." (Doc. 9 at 2–4.) For the reasons set forth below the Court, **GRANTS** the habeas petition.[1]

[1] When the Court set a briefing schedule on the motion for TRO, it ordered the parties to state their position as to whether the motion for TRO should be converted to a preliminary injunction without further briefing, whether the parties sought a hearing, and whether the parties sought additional briefing on the habeas petition. (Doc. 7.) Respondents do not request a hearing or further briefing and ask this court to dismiss the petition. (Doc. 9.) Petitioner did not file a reply. Thus, the Court decides the case on the underlying habeas petition and on the present record.

## II. LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## III. FACTUAL BACKGROUND

Petitioner is from Mexico. (Doc. 1 at 4.) Petitioner first entered the United States in 2003 but was apprehended by Customs and Border Protection and voluntarily returned to Mexico. (Doc. 9 at 8.) Petitioner then re-entered the United States in 2023 but was again apprehended by CBP and removed to Mexico pursuant to expedited removal. (*Id.*) On May 2, 2024, Petitioner again returned to the United States through a scheduled CBP one application, claimed a credible fear of returning to Mexico, and requested asylum. (*Id.* at 8, 11–12.) On May 11, 2024, USCIS found Petitioner's asylum claim to be positive. (*Id.* at 8.) Although Petitioner was initially processed for expedited removal on May 2, 2024, (*id.* at 12, 14), because he received a positive asylum determination, (*id.* at 8), he was placed into standard removal proceedings pursuant to an I-862 Notice to Appear. (*Id.* at 21.) On May 14, 2024, DHS issued the Notice to Appear charging Petitioner as removable under Section 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. (*Id.*) On May 15, 2026, DHS then released the Petitioner into the interior of the country on parole pursuant to Alternatives to Detention (ATD). (*See* Doc. 1 at 5–6, 39; Doc. 9 at 18.) Petitioner's removal proceedings are ongoing with no final order of removal in place.[2]

For over two years, Petitioner lived in the United States. (Doc. 1 at 5–6, 8–9.) Petitioner settled in Fresno, California and lives with his mother and sister. (*Id.* at 5–6.) Petitioner obtained

---

[2] *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseinformation (last visited October 16, 2026).

a valid driver's license, which expires in 2029. (*Id*. at 23.) Petitioner also obtained a work authorization card, which expires in 2030, and a corresponding work social security card. (*Id*. at 44–46.) Petitioner indicates that he "complied with" his ATD reporting requirements "on time at all times." (*Id*. at 6.) He indicates that he appeared in person every month for his ICE check-ins and sent facial recognition photographs every Thursday through the SmartLINK application. (*Id*.) Petitioner has no criminal history. (*Id*. at 8; *see also* Doc. 9 at 8.) Petitioner also indicates that he is an active member of his church, and his pastor submitted a letter of support on his behalf. (*See* Doc. 1 at 9, 41.)

In 2026, Petitioner received notice through the SmartLINK application that his appearance was required at an ICE check-in, but he indicates that this appointment was "neither scheduled nor programmed" and was set to occur outside of regular "office hours," namely at 7:00 a.m. on Sunday, August 30, 2026. (Doc. 1 at 6, 32–33.) As such, Petitioner asked his sister to accompany him to the scheduled appointment. (*Id*. at 6.) Petitioner indicates that when he arrived, ICE denied entry to his sister, asked Petitioner to place his belongings in a plastic tray, and directed him to sit inside a holding cell. (*Id*. at 7.) Petitioner further states that ICE agents asked him to sign documentation multiple times and that when he refused, the agents yelled at him. (*Id*.) Petitioner states that ICE then arrested him without explanation and transferred him to the Golden State Annex Facility, in McFarland, California, where he remains. (*Id*. at 7–8.)

According to the I-213 submitted by Respondents, ICE agents indicate that they conducted a record check prior to Petitioner's scheduled appointment and discovered that he had six ATD violations. (Doc. 9 at 7.) Specifically, the I-213 indicates that Petitioner missed four biometric check-ins, once failed to upload his location, and once failed an in-person home visit on July 4, 2024, August 1, 2024, September 19, 2024, December 5, 2024, January 9, 2025, and January 15, 2026. (*Id*. at 8.) Petitioner disputes these allegations. (Doc. 1 at 6.) Apart from the I-213, Respondents fail to attach substantive evidence of the alleged violations, such as SmartLINK records, biometric reporting logs, or electronic records displaying failed submissions. (*See* Doc. 9.)

On September 28, 2026, Petitioner filed a TRO and petition for writ of habeas corpus,

arguing that his re-detention without pre-deprivation notice and hearing violated the Fifth Amendment Due Process Clause. (*See* Doc. 1 at 19–20; Doc. 4 at 5–6.) On October 2, 2026, Respondents filed an opposition arguing that Petitioner is mandatorily detained under 8 U.S.C. § 1225(b)(1) as an "applicant for admission" who was formerly processed for expedited removal. (Doc. 9 at 1–2.) Respondents further argue that Petitioner's re-detention was justified due to his ATD violations and parole history, which indicates he is a flight risk. (Doc. 9 at 2.) Petitioner did not file a reply by the deadline.

## IV. DISCUSSION

Respondents argue that Petitioner is lawfully detained under § 1225(b)(1) because he was formerly processed for expedited removal and is therefore categorically ineligible for a bond hearing. (Doc. 9 at 1–4, 14.) However, Respondents fail to acknowledge that Petitioner was later placed into standard removal proceedings after receiving a positive asylum determination and then released on parole. (*See id*. at 8, 18, 21.) Those removal proceedings are still ongoing. (*See id*. at 21.) Irrespective of whether Petitioner was formerly expeditiously removed in 2023 and again processed for expedited removal upon re-entry in 2024, (*id*. at 8, 14), Petitioner claimed and received a positive asylum determination and was subsequently placed into standard removal proceedings. (*Id*. at 8, 21.) In doing so, DHS released the Petitioner on parole pursuant to Alternatives to Detention. (*Id*. at 18; *see* Doc. 1 at 39.) Thus, Petitioner's detention is governed by 8 U.S.C. § 1226(a) as an individual formerly encountered upon entry into the United States and released into the interior of the country on parole. *See e.g.*, *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026); *J.S.H.M. v. Wofford*, No. 1:25-CV-01309-JLT-SKO, 2025 WL 2938808, at *3–6 (E.D. Cal. Oct. 16, 2025); *Ortiz Donis v. Chestnut,* No. 1:25-CV-01228-JLT-SAB (HC), 2025 WL 32879514 (E.D. Cal. Oct. 9, 2025); *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT, 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185 (E.D. Cal. Sept. 5, 2025); *Aguilera v. Albarran*, No. 1:25-CV-01619 JLT SAB, 2025 WL 3485016 (E.D. Cal. Dec. 4, 2025); *Garcia v. Chestnut*, No. 1:25-CV-01907-JLT-CDB, 2025 WL 3771348 (E.D. Cal. Dec. 31, 2025); *Carlos v. Chestnut*, No. 1:26-CV-00007-JLT-SKO (HC), 2026 WL 145889 (E.D. Cal. Jan. 20, 2026).

Accordingly, Petitioner's re-detention after more than two years of release without a pre-deprivation hearing violated the Due Process Clause of the Fifth Amendment.

However, Respondents further argue that Petitioner's ATD violations justified Petitioner's re-detention without a pre-deprivation hearing. (*See* Doc. 9 at 2.) Petitioner disputes these allegations and argues that he "complied . . . on time at all times" with his ATD requirements. (Doc. 1 at 6.) Though this Court would generally order a bond hearing as the appropriate remedy in cases of alleged ATD violations, this Court finds that Respondents failed to provide sufficient supporting documentation regarding the nature and substance of Petitioner's alleged ATD violations. *Cf. Bejarano v. Chestnut*, *et al.*, No. 1:25-cv-01905-JLT-SAB, 2026 WL 92018, at *2, 4–6, 7 (E.D. Cal. Jan. 13, 2026) (ordering a post-deprivation bond hearing because respondents' evidence—including a comprehensive list of the date/type of violation and a declaration from a deportation officer who referenced three exhibits from DHS records—adequately demonstrated legitimate violations and were not obviously pretextual for petitioner's arrest); *Nateros v. Chestnut, et al.*, No. 1:25-cv-01950-JLT-SKO, 2026 WL 177799, at *2, 4, 6 (E.D. Cal. Jan. 22, 2026) (ordering a post-deprivation bond hearing because respondents' evidence—including attached exhibits showing at least ten documented ATD violations and petitioner's admitted failure to comply with timely check-ins—constituted sufficient evidence and adequate rationale for re-arresting the petitioner).

In this case, Respondents' allegations of ATD violations fail to adequately show a change in circumstances such that re-detention was justified and not clearly pretextual. Petitioner's last alleged ATD violation occurred on January 15, 2026, but Petitioner was not arrested by ICE until *after* he arrived for his check-in appointment, months later in August 2026. (*See* Doc. 9 at 7–8); *see Dilpreet Singh v. Andrews, et al.*, No. 1:26-cv-03299-JLT-EPG, 2026 WL 1361738, at *2–3 (E.D. Cal. May 15, 2026); *E.A.T.-B v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025) (ordering petitioner's immediate release where ICE's post-hoc explanation that ATD violations warranted his detention was pretextual, in part, because ICE first became aware of petitioner's alleged ATD violations a few hours before his immigration hearing). Further, Petitioner has no criminal history and there is no other

indication in the record to suggest he presents a danger to the community. (Doc. 9 at 8.) Petitioner has a valid driver's license, valid work authorization, and is involved in his community. (Doc. 1 at 9, 23, 44–46.)

For the foregoing reasons, the Court **ORDERS**:

1. The petition for writ of habeas corpus (Doc. 1) is **GRANTED**. Petitioner **SHALL** be **RELEASED IMMEDIATELY.**

2. The motion to appoint counsel (Doc. 3) is **DENIED** as **MOOT**.[3]

3. The motion for temporary restraining order (Doc. 4) is **DENIED** as **MOOT**.

4. Respondents are **ENJOINED** and **RESTRAINED** from re-detaining Petitioner unless the government provides notice to Petitioner a minimum of seven days in advance and holds a bond hearing before a neutral arbiter pursuant to section 1226(a) and applicable regulations, at which Petitioner's eligibility for bond must be considered, and where the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community, such that physical custody is legally justified[4];

5. The Clerk of Court is directed to serve the Golden State Annex Detention Facility in McFarland, California with a copy of this Order.

6. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: October 16, 2026

UNITED STATES DISTRICT JUDGE

---

[3] Petitioner also asks this Court to appoint counsel in his habeas action. (Doc. 3.) Title 18 U.S.C. § 3006A(a)(2)(B) authorizes the appointment of counsel at any stage of the case if "the interests of justice so require." Because the Court **GRANTS** the habeas petition and orders immediate release, the motion to appoint counsel is now moot.

[4] If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements set forth here **SHALL** be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, Respondents may detain Petitioner for the sole and limited purpose of executing removal. In this event, Respondent's **SHALL** provide a bond hearing in the timeframe required by law.